UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

INTERVARSITY CHRISTIAN FELLOWSHIP/USA, ET AL.,

Plaintiff,

v.

SUNY BROOME COMMUNITY COLLEGE; THE BOARD OF TRUSTEES OF SUNY BROOME COMMUNITY COLLEGE; TONY D. HAWKINS, President of SUNY Broome Community College, in his official and personal capacities; CAROL ROSS-SCOTT, Vice President for Student Development and Chief Diversity Officer, in her official and personal capacities; and NICHOLAS M. KOCIENIEWSKI, Director of Student Activities, in his official and personal capacities,

Defendants.

Civil Action No. 3:26-cv-01623-MAD-MJK

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

BOND, SCHOENECK & KING, PLLC
Suzanne M. Messer
Jacqueline E. Zahn
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8628
*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT .....1

FACTUAL BACKGROUND .....3

LEGAL STANDARD .....6

ARGUMENT .....8

POINT I: PLAINTIFFS CANNOT DEMONSTRATE IRREPARABLE HARM .....8

POINT II: PLAINTIFFS HAVE NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS .....10

A. Plaintiff's Free Speech and Expressive Association Claims Are Analyzed Together Under the Limited Public Forum Framework .....10

B. The Supreme Court's Holding in *Christian Legal Society v. Martinez* Forecloses Plaintiffs' Free Speech and Free Association Claims .....11

C. Plaintiff's Free Exercise Claim is Unlikely to Succeed .....15

1. SUNY Broome's All Comers Policy is Neutral and Generally Applicable .....16

2. SUNY Broome's Open Access and Nondiscrimination Policies Satisfy Rational Basis Review .....20

D. The Ministerial Exception and Church Autonomy Doctrine Cases Are Inapposite .....22

POINT III: THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVORS DEFENDANTS .....24

CONCLUSION .....25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Azagrar v. United States SBA*,
2026 U.S. App. LEXIS 15585 (2d Cir June 1, 2026) ........8

*Belya v. Kapral*,
2026 U.S. App. LEXIS 24841 (2d. Cir. Aug. 18, 2026)........22

*Belya v. Kapral*,
45 F.4th 621 (2d Cir. 2022) ........22

*Boy Scouts of America v. Dale*,
530 U.S. 640 (2000)........15

*Carson v. Makin*,
596 U.S. 767 (2022)........19, 20

*Christian Athletes v. District of Columbia*,
743 F. Supp. 3d 73 (D.D.C. 2024) ........17

*Christian Legal Soc'y v. Walker*,
453 F.3d 853 (7th Cir. 2006) ........15

*Christian Legal Soc. Chapter of the U. of Cal., Hastings Coll. of L. v. Martinez*,
561 U.S. 661 (2010)........ *passim*

*Daileader v. Certain Underwriters at Lloyd's London Syndicate 1861*,
96 F.4th 351 (2d Cir. 2024) ........7, 8

*Emp. Div., Dep't of Hum. Res. of Or. v. Smith*,
494 U.S. 872 (1990)........19, 20

*Espinoza v. Montana Department of Revenue*,
591 U.S. 464 (2020)........19, 20

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ*.,
82 F.4th 664 (9th Cir. 2023) (en banc)........17

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
565 U.S. 171 (2012)........22

*Hsu By & Through Hsu v. Roslyn Union Free School District No. 3*,
85 F.3d 839 (2d Cir. 1996)........14

*Intervarsity Christian Fellowship/USA v. Bd. of Governors of Wayne State Univ*.,
534 F. Supp. 3d 785 (E.D. Mich. 2021)........17

*InterVarsity Christian Fellowship/USA v. Univ. of Iowa*,
408 F. Supp. 3d 960 (S.D. Iowa 2019) ....................17

*Kennedy v. Bremerton School District*,
597 U.S. 507 (2022)....................20

*Miller v. McDonald*,
180 F.4th 420 (2d Cir. 2026) ....................15

*Oliver v. New York State Police*,
2019 U.S. Dist. LEXIS 76272 (N.D.N.Y. May 6, 2019)....................9

*Perez v. Quiros*,
2026 U.S. App. LEXIS 9811 (2d Cir. April 6, 2026) ....................8

*Puri v. Khalsa*,
844 F.3d 1152 (9th Cir. 2017) ....................23

*Rignol v. Yale Univ.*,
2025 U.S. Dist. LEXIS 84896 (D. Conn. May 5, 2026)....................24, 25

*Roberts v. U.S. Jaycees*,
468 U.S. 609 (1984)....................21

*Slattery v. Hochul*,
61 F.4th 278 (2d Cir. 2023) ....................17

*St. Dominic Acad. v. Makin*,
181 F.4th 11 (1st Cir. 2026)....................19, 23

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
582 U.S. 449 (2017)....................19, 20

*Tyler v. City of Kingston*,
74 F.4th 57 (2d Cir. 2023) ....................11

*Univ. at Buffalo Young Ams. for Freedom v. Univ. at Buffalo Student Ass'n*,
2025 U.S. App. LEXIS 28681 (2d Cir. Nov. 3, 2025)....................10, 11, 14, 15

*We the Patriots United States v. Conn. Office of Early Childhood Dev.*,
76 F.4th 130 (2d Cir. 2023) ....................15, 16

*We The Patriots USA, Inc. v. Hochul*,
17 F.4th 266 (2d Cir. 2021) (per curiam)....................19, 20, 21

*Youth 71Five Ministries v. Williams*,
160 F.4th 964 (9th Cir. 2025) ....................20, 21, 23

**Statutes**

Federal Equal Access Act ....................................................................................................14

Defendants SUNY Broome Community College ("SUNY Broome" or the "College"), Tony D. Hawkins, Carol Ross-Scott, and Nicholas M. Kocieniewski (collectively, "Defendants"), respectfully submit this memorandum of law in opposition to the motion of Plaintiffs InterVarsity Christian Fellowship/USA and InterVarsity Christian Fellowship of SUNY Broome (collectively, "InterVarsity" or "Plaintiffs") for a preliminary injunction.

## PRELIMINARY STATEMENT

Plaintiffs ask the Court to enter extraordinary emergency relief compelling a public college to grant official recognition and the attendant institutional benefits to a student organization whose proposed constitution expressly reserves leadership positions to students who affirm particular religious beliefs. The motion should be denied.

As an initial matter, because the requested relief would alter the status quo by requiring SUNY Broome to confer a status and benefits that InterVarsity has never possessed or received, Plaintiffs must satisfy the heightened standard applicable to mandatory injunctions by demonstrating a *clear or substantial* likelihood of success on the merits and making a *strong showing* of irreparable harm. They fail on both fronts.

Plaintiffs' own submissions show that InterVarsity Broome continues to exist, continues to meet, and continues to engage in Bible studies, prayer, worship, and ministry without recognized status. What Plaintiffs identify as urgent harm this Court must address on an emergency motion is therefore not the loss of the ability to speak, worship, or associate, but the loss of institutional advantages that accompany official recognition, including easier room reservations, tabling opportunities, advertising, a website listing, and access to student activity funds. While those may be desired benefits, this record does not show that their absence creates

the kind of imminent, concrete, non-speculative irreparable injury required for preliminary relief.

The timing of this motion for emergency relief underscores the same point. SUNY Broome advised in January and February 2026 that InterVarsity's leadership restriction could not remain in a recognized club constitution, formally denied the application on February 24, 2026, and reaffirmed that position on May 7, 2026. Yet Plaintiffs did not file this action until August 21, 2026, and then sought emergency relief after the start of the academic year. That chronology cannot be reconciled with the assertion that only immediate judicial intervention from this extremely busy Court can prevent irreparable injury.[1]

Plaintiffs also have not made the requisite strong merits showing required for the preliminary relief they are seeking. The question ultimately to be decided is not whether InterVarsity may hold its beliefs, choose its private leaders, or continue its ministry. It may. The question is whether SUNY Broome, as a public institution administering a recognized student organization program, must confer official status and related benefits on a club that refuses to comply with an across-the-board open access rule requiring any student who pays the Student Activity Fee and meets the GPA threshold to be eligible for executive board leadership positions. On that question, the Supreme Court's decision in *Christian Legal Society v. Martinez* strongly favors Defendants. Plaintiffs' reliance on the ministerial exception and church-autonomy cases does not impact the considerations at issue, because those authorities address employment and internal ecclesiastical governance, not a public college's viewpoint-

---

[1] Nor did Plaintiffs comply with the Court's Individual Rules, which require pre-motion letters and conferences in civil cases and states that "[a]ny motions filed that fail to comply with these rules will be summarily denied by the Court." https://www.nynd.uscourts.gov/sites/nynd/files/MAD_Rules_of_Practice_04_14_2020.pdf (last visited Sept. 28, 2026).

neutral condition of open access to and nondiscrimination in a limited public forum and public benefits.

Finally, the equities and public interest favor denial. SUNY Broome has a legitimate and substantial interest in enforcing one set of recognition rules for all student organizations, ensuring that leadership opportunities in officially recognized and publicly supported clubs remain open to the students who fund that program, and avoiding a judicial order compelling the College to depart from its stated nondiscrimination and open access policies before the merits are adjudicated.

**FACTUAL BACKGROUND**

Defendant SUNY Broome Community College is an educational institution located in Binghamton, New York. SUNY Broome maintains a network of recognized student organizations. SUNY Broome's Office of Student Activities oversees and supports these student clubs. *See* Declaration of Nicholas M. Kocieniewski, dated September 24, 2026 ("Kocieniewski Dec"), ¶ 4.

The policies and procedures governing student clubs are contained in the Student Clubs Handbook (the "Club Handbook"). *Id*. Club membership and participation must be available to any student who pays the SUNY Broome Student Activity Fee. *Id.* at ¶ 5. Further, the College forbids clubs from discriminating against any student seeking to be elected to the club's executive board, so long as the student: (1) pays the Student Activity Fee; and (2) satisfies the applicable GPA requirement. *Id.* at ¶ 5. Specifically, the Club Handbook states:

> …Clubs may not discriminate against any student for membership or executive board positions in any way. This includes, but is not limited to, discrimination on the basis of race, color, ethnicity, religion, citizenship status, sex, gender, gender identity, gender expression, sexual orientation, veteran status, physical or mental disability or age. Any student that pays the Student Activity Fee must be eligible for membership. Any student that pays the Student Activity Fee and

> has the minimum GPA outlined in this handbook must be eligible for an executive board position.

*Id.*; Kocieniewski Dec., Ex. A pp. 2-3 (the "Open Access Policy").

This "all comers" Open Access Policy is directly aligned with the College's Non-discrimination Policy, which states, in pertinent part:

> In all of its activity, the College adheres to its non-discrimination commitment. SUNY Broome Community College does not discriminate on the basis of…religion (including religious attire, clothing or facial hair)…[in the] operation of any of its programs and activities…

*See* Kocieniewski Dec., Ex. C (the "Non-discrimination Policy").

Recognition of a student club confers certain benefits, including, but not limited to, the right to use school property to gather, hold events, recruit new members, gain access to funds, and participate in student fairs. *Id.* at ¶¶ 9-11. Any student club, whether sponsored or unsponsored, must apply for recognition from the College, and re-register the club each academic year. As a part of that process, each and every student club constitution is reviewed for compliance with the Club Handbook's Open Access policy, and SUNY Broome's Non-discrimination policy. *Id*. at ¶ 12.[2]

On January 11, 2026, SUNY Broome student Jacob Sonner submitted an application seeking, for the first time, recognition for InterVarsity Broome. *Id*. at ¶ 12; Kocieniewski Dec., Ex. D. As such, InterVarsity Broome's proposed constitution was reviewed for compliance with the aforementioned non-discrimination policies. As originally submitted, the proposed InterVarsity constitution required that any candidate for an elected officer position agree with the InterVarsity "statement of faith." *See* Kocieniewski Dec., Ex. C, Art. 4, §1.

[2] The requirement that a student club's constitution be submitted in connection with the annual re-registration requirement was put in place in 2025. Kocieniewski Decl., ¶ 28.

On January 27, 2026, Director of Student Activities Dr. Nicholas M. Kocieniewski ("Dr. Nicholas M. Kocieniewski") reviewed the proposed InterVarsity constitution, and made comments and proposed revisions, specifically noting that the provision requiring an elected officer to agree with the InterVarsity statement of faith "cannot be included." *Id.* at ¶ 15; Kocieniewski Dec., Ex. F. On January 28, 2026, Mr. Sonner advised that InterVarsity would meet to "discuss the changes" Dr. Kocieniewski had identified, and on February 5, 2026, Mr. Sonner uploaded a revised Constitution through The Swarm. *Id.* at ¶ 17; Kocieniewski Dec., Ex. G. The revised constitution was then reviewed by the Student Government Association's Vice President of Student Affairs. *Id.* at ¶ 17. Based on the revised constitution, the Vice President intended to recommend recognition of InterVarsity, and the General Assembly was scheduled to vote on both the constitution and InterVarsity's application for recognition on February 20, 2026. *Id.*

However, on February 19, 2026, at 3:41 p.m., Mr. Sonner advised Dr. Kocieniewski that InterVarsity Broome wanted the College to consider their original constitution (containing the discriminatory requirement for elected officer positions) rather than the edited version (which would comply with the College's non-discrimination policies). *Id.* at ¶ 19; Kocieniewski Dec., Ex. H. Dr. Kocieniewski advised Mr. Sonner the following morning that the original constitution would need to be sent to the General Assembly for review before it could be placed on the agenda for a vote. Thus, more time was needed, and InterVarsity's recognition vote could not be included on that day's General Assembly agenda. *Id.* at ¶ 20; Kocieniewski Dec., Ex. I.

Mr. Sonner replied that a representative from the InterVarsity organization had advised him that they could not remove the "theological statement clause" for elected leadership

positions because "it is a federally protected right for religious groups to have a statement of belief." *Id.* at ¶ 22. Later on February 20, 2026, Sophia Chan, a representative from InterVarsity's SUNY Binghamton chapter, wrote Dr. Kocieniewski, claiming that InterVarsity had the right to include the religious-based leadership requirement in its constitution. *Id.* at ¶ 20; Kocieniewski Dec., Ex. K.

Ms. Chan also asked what could be done to proceed with a vote to recognize InterVarsity Broome at the next General Assembly meeting, which was scheduled for March 6, 2026. *Id.* On February 23, 2026, Dr. Kocieniewski explained to Mr. Sonner, copying Ms. Chan, that InterVarsity's statement of faith could be included in the constitution as an appendix, supporting document, and/or mission statement of the club. *Id.* at ¶ 23; Kocieniewski Dec., Ex. L. However, SUNY Broome could not permit InterVarsity Broome to restrict eligibility for leadership in the organization based upon a requirement that the student adhere to particular religious beliefs. *Id.*

On February 24, 2026, the College rejected InterVarsity Broome's application because it violated the Club Open Access policy, Section 2.2, and SUNY Broome's Non-discrimination Statement, Policy No. GA2001. *Id* at ¶ 24; Kocieniewski Dec., Ex. M. On March 23, 2026, InterVarsity President & CEO, Tom Lin, authored a letter to SUNY Broome President Dr. Tony D. Hawkins asking the College to reconsider its decision. *Id* at ¶ 25. On May 7, 2026, President Hawkins reaffirmed the decision to deny InterVarsity Broome's application for recognition.

## **LEGAL STANDARD**

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Daileader v. Certain Underwriters at Lloyd's London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024). "In general, '[a] plaintiff seeking a preliminary injunction must establish that he is

likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Id.*

Those requirements become even more demanding where, as here, a plaintiff seeks a *mandatory* injunction. In that circumstance, the plaintiff must demonstrate a "*clear or substantial* likelihood of success on the merits" and make a "*strong showing* of irreparable harm." *Id*. (emphasis in original).

As the Second Circuit has explained, "[p]rohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it." *Id.* "In this context, the 'status quo' is really the 'status quo ante' - that is, 'the last actual, peaceable[,] uncontested status which preceded the pending controversy.'" *Id.* (quoting *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 36 (2d Cir. 2018). Put simply, mandatory injunctions generally require the nonmovant to take affirmative action, whereas prohibitory injunctions simply restrain conduct. *Id*.

Here, the "last actual, peaceable, uncontested status which preceded the pending controversy" was that in which InterVarsity Broome was not a recognized student organization. Plaintiffs now seek to alter that status quo by asking this Court to enter a preliminary injunction compelling SUNY Broome to grant official recognition, and the attendant institutional benefits, to InterVarsity. This requested relief is affirmative, not prohibitory. *See Azagrar v. United States SBA*, 2026 U.S. App. LEXIS 15585, *3 (2d Cir June 1, 2026) (holding that plaintiff's request for an injunction requiring defendant to consider his loan application was a request for a mandatory injunction subject to heightened standard). Nor can Plaintiffs avoid the heightened standard by framing their request as one to "enjoin" Defendants from denying recognition. As

the Second Circuit has recognized, because injunctions may be "phrased either in mandatory or prohibitory terms"; the relevant inquiry is the effect of the relief sought. *Daileader*, 96 F.4th at 356. Here, Plaintiffs seek an order requiring SUNY Broome to grant InterVarsity official recognition and the attendant benefits, a status it does not currently possess and has never possessed. Plaintiffs therefore must demonstrate a clear or substantial likelihood of success on the merits and make a strong showing of irreparable harm. They can do neither.

## <u>ARGUMENT</u>

## <u>POINT I</u>

## PLAINTIFFS CANNOT DEMONSTRATE IRREPARABLE HARM

"A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Perez v. Quiros*, 2026 U.S. App. LEXIS 9811, *3 (2d Cir. April 6, 2026) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)). "To satisfy the irreparable harm requirement, plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.*

Plaintiffs do not – and cannot – show that they will suffer irreparable harm absent an order compelling SUNY Broome to grant InterVarsity official recognition before this litigation is resolved on the merits. Plaintiffs' own submissions demonstrate the opposite. Students wishing to participate with others holding InterVarsity's values continue to meet and continue to engage in Bible study, prayer, worship, fellowship, and ministry despite its lack of recognized status. *See* ECF Doc. No. 24-1 ("*Plfs.' Mem.*"), at p. 11; ECF Doc. No. 24-27("Sonner Dec"), ¶¶ 6, 9.

Plaintiffs have not lost the ability to worship, associate, evangelize, or organize around their faith. InterVarsity's own papers demonstrate that the group has continued to meet in common areas on campus. *Id*. Rather, the purported injury is, at its core, the loss of the benefits accompanying official recognition, i.e., the $500 funding allocation, access to room reservations, tabling opportunities at SUNY Broome-organized student activities fairs,[3] and the publication of information through SUNY Broome's The Swarm platform. Any claim that the loss of recognition has somehow impacted membership or recruiting efforts is entirely speculative and unsupported by the record. Mr. Sonner opines generally that being unrecognized has made InterVarsity's "already-tough outreach and membership recruitment efforts even more challenging," (Sonner Dec. ¶¶ 29, 63) but provides no factual information actually demonstrating an inability to attract new members. Indeed, Mr. Sonner confirms the speculative and future-looking nature of the purported harm, stating only that, without recognition, he "fear[s] the club won't be able to last very long." *Id*. ¶ 29. And, any loss of funding is calculable, rendering any injury compensable and not irreparable. *Wisdom Imp. Sales Co. L.L.C., Labatt Brewing Co.*, 339 F.3d 101, 113-14 (2d Cir. 2003) (defining irreparable harm to be "certain and imminent harm for which a monetary award does not adequately compensate" (citations omitted)).

Plaintiffs' nearly six-month delay in filing this action and seeking emergency relief only underscores the absence of any genuine emergency. "The Second Circuit has explained that a party's 'failure to act sooner 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'" *Oliver*

[3] Student activity fairs take place once in the fall semester and once in the spring semester.

*v. New York State Police*, 2019 U.S. Dist. LEXIS 76272, *16-17 (N.D.N.Y. May 6, 2019) (quoting *Citibank N*.A. *v.* Citytrust, 756 F.2d 273, 276 (2d Cir. 1985)).

SUNY Broome formally denied InterVarsity's application for recognition on February 24, 2026, and reaffirmed that decision on May 7, 2026. Plaintiffs did not commence this action until August 21, 2026. That delay is difficult to reconcile with the assertion that immediate judicial intervention is necessary to prevent irreparable injury. If the alleged harms were truly as severe and urgent as Plaintiffs ask this Court to find, they would not have waited nearly six months after the denial of recognition, and more than three months after SUNY Broome's reaffirmation of that decision, before seeking a preliminary injunction. That six-month delay demonstrates that the alleged injury is neither imminent nor irreparable. *See KF ex rel. CF v. Monroe Woodbury Cent. School Dist.*, No. 12 Civ. 2200(ER), 2012 U.S. Dist. LEXIS 60341, 2012 WL 1521060, at *5 (S.D.N.Y. Apr. 30, 2012) (finding no irreparable harm when application for preliminary injunction was brought nearly six months after the alleged harm first occurred)

Because Plaintiffs cannot make any showing, let alone the strong showing of irreparable harm required to obtain a mandatory preliminary injunction, their motion should be denied on that basis alone.

## POINT II

## PLAINTIFFS HAVE NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS

### A. Plaintiff's Free Speech and Expressive Association Claims Are Analyzed Together Under the Limited Public Forum Framework

Plaintiffs assert that SUNY Broome's Open Access Policy violates its right to free speech and free association. "A university forum for student organizations is a 'limited public

forum.'" *Univ. at Buffalo Young Ams. for Freedom v. Univ. at Buffalo Student Ass'n*, 2025 U.S. App. LEXIS 28681, *7 (2d Cir. Nov. 3, 2025) (summary order) (quoting *Christian Legal Soc. Chapter of the U. of Cal., Hastings Coll. of L. v. Martinez*, 561 U.S. 661, 679 (2010)). "In limited public forums, restrictions on expression that fall outside 'the limited category for which the forum has been opened' need only be 'viewpoint neutral and reasonable.'" *Id.*

Where, as here, "free speech and expressive-association claims 'merge' in a university student organization forum, courts should assess those claims together under the viewpoint neutrality test applicable to limited public forums." *Univ. at Buffalo Young Ams. for Freedom* 2025 U.S. App. LEXIS 28681 at *7 (relying on *Martinez* and holding that student organization's free speech and free association claims must be analyzed together under the limited public forum framework).

### B. The Supreme Court's Holding in *Christian Legal Society v. Martinez* Forecloses Plaintiffs' Free Speech and Free Association Claims

Viewpoint-based restrictions are those that "target a specific premise, a perspective, a standpoint from which a variety of subjects may be discussed and considered." *Univ. at Buffalo Young Ams. for Freedom,* 2025 U.S. App. LEXIS 28681, at *7. Where a college's policy applies to all student clubs "whatever their views," and does not confer unbridled discretion, the policy is viewpoint neutral. *See id.* at *8-9.

"In a limited public forum, the reasonableness analysis turns on the particular purpose and characteristics of the forum and the extent to which the restrictions on speech are reasonably related to maintaining the environment the government intended to create in that forum." *Univ. at Buffalo Young Ams. for Freedom,* 2025 U.S. App. LEXIS 28681, at * 9-10. "To survive First Amendment scrutiny, the restriction need not be the most reasonable or the only reasonable limitation imaginable, but simply consistent with the government's legitimate interest in

preserving the property for the use to which it is lawfully dedicated." *Tyler v. City of Kingston*, 74 F.4th 57, 63 (2d Cir. 2023) (internal quotation marks and citations omitted).

Plaintiffs contend that SUNY Broome's Open Access Policy, which applies equally to all student organizations, religious and secular alike, is not viewpoint neutral because it "fundamentally undermines and alters InterVarsity's religious viewpoint" and creates a "unique pressure on InterVarsity's religious speech." *Plfs.' Mem.* pp. 25-26. Plaintiffs also contend that the Open Access Policy is unreasonable because it "undermines" the forum's objective to "foster private student groups that give students room for 'personal exploration' and 'leadership' and to 'help students feel at home…'" *Id*. at 26.

Plaintiffs' arguments find no support in the applicable case law. Indeed, the Supreme Court in *Christian Legal Society v. Martinez* expressly *rejected* these same arguments in upholding a virtually identical all comers policy. 561 U.S. 661 (2010). There, the plaintiff, a Christian student organization, sought official recognition at Hastings College of the Law. Like SUNY Broome, Hastings conditioned official recognition and its accompanying benefits on compliance with an "all comers" policy that required recognized student organizations to "allow any student to participate, become a member, or seek leadership positions, regardless of her status or beliefs." *Id.* at 671.

There, like here, the plaintiff student organization was denied official recognition because it insisted on including in its bylaws a requirement that members and officers sign a "Statement of Faith" in violation of the college's policy. *Id.* at 672. After its denial, the organization brought suit, alleging that the all comers policy infringed its rights under the First Amendment, including its rights to free speech, expressive association, and free exercise. *Id.* at 669-72.

In support of its free speech and expressive association claims, Christian Legal Society argued, much like Plaintiffs do here, that Hastings' all comers policy was not viewpoint neutral because, although facially neutral, it imposed a disproportionate burden on it as a religious organization. *Id*. at 695. The Supreme Court dismissed that argument outright, stating that this argument "stumbl[ed] from its first step" because "a regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id*. at 695 (cleaned up). Indeed, the Court went so far to observe that it was "hard to imagine a more viewpoint-neutral policy than one requiring *all* student groups to accept *all* comers." *Id.* at 694 (emphasis in original).

Christian Legal Society also argued that Hastings' all comers policy was unreasonable because, in its view, "there can be no diversity of viewpoints in a forum . . . if groups are not permitted to form around viewpoints" and because the policy could facilitate "hostile takeovers" by students opposed to a group's mission. *Martinez*, 561 U.S. at 689-90. The Supreme Court was unpersuaded.

The Court found, *inter alia*, that the all comers policy was reasonable because Hastings could reasonably adhere to the view that its all comers policy would bring together individuals with diverse backgrounds and beliefs. *Id*. at 689. The Court further explained that the policy was reasonable because it ensured that "no Hastings student is forced to fund a group that would reject her as a member." *Id*. at 689-90.

The Court likewise dismissed Christian Legal Society's "hostile takeover" argument as unpersuasive, explaining that "[s]tudents tend to self-sort and presumably will not endeavor en masse to join--let alone seek leadership positions in--groups pursuing missions wholly at odds with their personal beliefs," and observing that, even if they did, "the members of that group

would not likely elect her as an officer" *Id*. at 692-93. As such, because Hastings' all comers policy was both reasonable and viewpoint neutral, it held that the policy was constitutional.

The Supreme Court's decision in *Christian Legal Society v. Martinez* is not merely persuasive; it is controlling. The all comers policy upheld in *Martinez* is on all fours with SUNY Broome's Open Access Policy, and the Supreme Court rejected the very arguments Plaintiffs advance here.

As with the all-comers policy upheld in *Martinez*, SUNY Broome's Open Access Policy is viewpoint neutral because it "serves purposes unrelated to the content of any organization's expression…" and requires *all* recognized student organizations to accept *all* otherwise eligible students for membership and leadership positions. *See Univ. at Buffalo Young Ams. for Freedom v. Univ*., 2025 U.S. App. LEXIS 28681 at *7-8 (holding that university' student organization policy was viewpoint neutral because the policy "prevents all clubs—whatever their views—from entering into contracts, commencing litigation, undertaking legal obligations, or operating as independent legal entities.")

Plaintiffs contend that SUNY Broome's Policy is not viewpoint neutral because it allegedly imposes a greater burden on religious organizations that wish to restrict leadership positions based on adherence to particular religious beliefs. *Plfs.' Mem*. pp. 26. But, even if true, *Martinez* expressly rejected that argument as grounds for finding an otherwise facially neutral policy unconstitutional.[4] Further, the Court's reasonableness analysis in *Martinez* applies with

[4] Plaintiffs' reliance on *Hsu By & Through Hsu v. Roslyn Union Free School District No. 3*, 85 F.3d 839, 856 (2d Cir. 1996), is misplaced. First, *Hsu* involved the interpretation of the federal Equal Access Act, not a constitutional challenge under the First Amendment. Second, *Hsu* predates *Christian Legal Society v. Martinez* by more than a decade. To the extent *Hsu* could be read to suggest a result inconsistent with *Martinez*, the Supreme Court's subsequent decision controls.

equal force here. Indeed, a restriction on access to a limited public forum "need not be the most reasonable or the only reasonable limitation." *Martinez*, 561 U.S. at 690. Rather, it need only be reasonable in light of the purposes served by the forum. *Id*. Measured against that standard, SUNY Broome's Open Access Policy – which was put into place to foster inclusivity amongst student organizations – easily passes muster. For the foregoing reasons, Plaintiffs cannot succeed on the merits of their free speech or expressive association claims. [5]

### C. Plaintiff's Free Exercise Claim is Unlikely to Succeed

The Free Exercise Clause provides that the states "shall make no law . . . prohibiting the free exercise" of religion. However, as the Supreme Court has long held, "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral [policy] of general applicability[.]'" *Miller v. McDonald*, 180 F.4th 420, 426-427 (2d Cir. 2026) (quoting *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990)); *We the Patriots v. Conn. Office of Early Childhood Dev*., 76 F.4th 130, 144 (2d Cir. 2023). As such, "a law [or policy] that incidentally burdens religious exercise is constitutional when it

[5] Plaintiffs urge the Court to analyze their free association claim separately under the three-part test articulated in *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000). But both the Supreme Court in *Christian Legal Society v. Martinez* and, more recently, the Second Circuit in *Univ. at Buffalo Young Americans for Freedom v. Univ. at Buffalo Student Ass'n*, 2025 U.S. App. LEXIS 28681, at *7, have made clear that, in the context of an all comers policy, the free speech and expressive-association claims must be analyzed together under the limited public forum framework. In any event, Plaintiffs' expressive association claim fails on its own terms. SUNY Broome's Open Access Policy does not "force" InterVarsity to "accept" any particular leaders. InterVarsity remains free to select as leaders those eligible students whom its members believe will best advance the organization's religious mission and objectives. Alternatively, InterVarsity remains free to discriminate based on religion and forgo the attendant benefits of official club recognition. Accordingly, the "forced inclusion" cases on which Plaintiffs rely are inapposite. *See, e.g., Boy Scouts of Am. v. Dale*, 530 U.S. 640, 643 (2000) (addressing the "forced inclusion" of a gay assistant scoutmaster). Plaintiffs' reliance on *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 861, 863 (7th Cir. 2006), is likewise misplaced because that decision predated, and cannot supersede, the Supreme Court's controlling decision in *Martinez*.

(1) is neutral and generally applicable and (2) satisfies rational basis review." *We the Patriots*, 76 F.4th at 144. SUNY Broome's all-comers Open Access and Non-discrimination policies satisfy both.

**1. SUNY Broome's All Comers Policy is Neutral and Generally Applicable**

A policy is neutral so long as it does not "explicitly single[] out a religious practice" or "target[] religious conduct for distinctive treatment." *We the Patriots*, 76 F.4th at 145 (quoting *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 281 (2d Cir. 2021) (per curiam)). "To fail the neutrality prong, it is not enough for a law to simply *affect* religious practice; the law or the process of its enactment must demonstrate 'hostility' to religion." *We the Patriots*, 76 F.4th at 144 (emphasis in original) (citing *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rts. Comm'n*, 584 U.S. (2018)).

"A law is generally applicable when it treats similar conduct similarly, without regard to whether the conduct is religiously motivated." *We the Patriots*, 76 F.4th at 145. A policy is not generally applicable where it "invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions," or, where it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.* (quoting *Fulton v. City of Philadelphia*, 593 U.S. 522, 534 (2021)).

Like InterVarsity Broome, the plaintiff in *Christian Legal Soc'y v. Martinez* also sought to invalidate an all comers policy on Free Exercise grounds. 561 U.S. 661 (2010). The Supreme Court rejected that challenge because "the Free Exercise Clause does not inhibit enforcement of otherwise valid regulations of general application that incidentally burden religious conduct." *Id*. at 697 n.2.

Here, exactly as in *Martinez*, Plaintiffs seek an exemption from an across-the-board all comers policy that applies equally to all recognized student organizations at SUNY Broome. That request must be rejected. First, SUNY Broome's Open Access and Non-discrimination Policies, which apply equally to all student organizations regardless of their religious or nonreligious character, are plainly neutral. The Policies do not single out religious groups, draw distinctions based on religion, or otherwise subject religious organizations to distinctive treatment. Nor do Plaintiffs contend that any historical background, events, or statements leading to the adoption of the Open Access Policy show hostility to religion. *Slattery v. Hochul*, 61 F.4th 278, 292 (2d Cir. 2023) (finding a statute prohibiting discrimination on the basis of the employee's reproductive health decision making facially neutral because it applied "equally to all [employers], both secular and religious" and plaintiff did not show that the law "is operationally discriminatory").

Second, SUNY Broome's Open Access and Non-discrimination policies are generally applicable because they contain no "mechanism for individual exemptions" by which student organizations may avoid compliance with those requirements.[6] *See* Kocieniewski Decl. ¶ 28. No recognized student organization, whether religious or secular, may restrict membership or

---

[6] On this point, the post-*Martinez* cases Plaintiffs cite are distinguishable. *See Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ*., 82 F.4th 664, 687 (9th Cir. 2023) (en banc) ("In our case, the District's policies are not generally applicable because the District retains discretion to grant individualized exemptions for its own programs and student programs alike."); *Christian Athletes v. District of Columbia*, 743 F. Supp. 3d 73, 90 (D.D.C. 2024) (finding the district's application of its anti-discrimination policy "replete with exemptions that treat comparable secular groups more favorably"); *Intervarsity Christian Fellowship/USA v. Bd. of Governors of Wayne State Univ*., 534 F. Supp. 3d 785, 823 (E.D. Mich. 2021) ("Even for groups that appear to be covered by the non-discrimination policy, Defendants have intentionally created exceptions and allowed them to select members and leaders based on protected categories."); *InterVarsity Christian Fellowship/USA v. Univ. of Iowa*, 408 F. Supp. 3d 960, 980 (S.D. Iowa 2019) ("[O]ther RSOs are free to limit membership and leadership based on the Human Rights Policy's protected characteristics").

eligibility for executive leadership positions based on religion, race, sex, or any other protected characteristic. *Id*. Nor do the Policies prohibit religious conduct while permitting comparable secular conduct that would undermine the College's asserted interests in the same manner.

To the contrary, Dr. Kocieniewski reviews each recognized student organization's constitution annually for compliance with the "all comers" Policy, and, since his employment at the College, no new student club has been granted recognition while restricting membership or leadership eligibility on the basis of any protected characteristic. *Id*. ¶¶ 27-28[7]. Indeed, other recognized student organizations, including the Muslim Student Association, ElevateHer, and Love You Like a Sister, are likewise required to maintain open membership and leadership eligibility and may not limit elected leadership positions to individuals possessing a particular protected characteristic. The Policies draw no distinctions based on religion and impose the same requirements on every student organization seeking official recognition, making them textbook examples of generally applicable Policies. *Id*. ¶¶ 28-29.

Plaintiffs' observation that in *Martinez*, the Supreme Court's rejection of the plaintiff's Free Exercise claim consisted of only three sentences in a footnote only underscores the weakness of this claim. *Plfs.' Mem*. p 22. Indeed, by disposing of the Free Exercise claim in a short footnote as "foreclosed" by and earlier Supreme Court decision, the Court signaled that the issue was so well settled that it did not warrant extended analysis.

---

[7] Dr. Kocieniewski became aware in 2025 that Campus Bible Fellowship had submitted a constitution in 2020 (before he was employed at SUNY Broome) that included certain restrictions on voting membership and leadership positions based on adherence to a statement of faith. Kocieniewski Decl. ¶ 27, n.3. Dr. Kocieniewski began requiring clubs to submit their constitutions along with re-registration in 2025. As such, he was previously unaware of the restrictions in Campus Bible Fellowship's constitution. *Id*. As soon as he learned of the restrictions based on religious beliefs, he informed Campus Bible that such restrictions could not be included in their constitution. Campus Bible Fellowship has been an inactive student club since 2025. *Id.*

And Plaintiffs' attempt to distinguish *Martinez* on the ground that the plaintiff organization sought to require both members and officers to sign a Statement of Faith, whereas Plaintiffs seek to impose religious qualifications only on officers, is a distinction without a difference. *Plfs.' Mem*. p. 21-22 The Supreme Court expressly recognized that Hastings' all comers policy applied to both membership and leadership positions alike and nevertheless rejected the plaintiff's Free Exercise claim in its entirety. *Id*. at 671. In doing so, the Court necessarily concluded that a neutral and generally applicable policy conditioning official recognition on open access does not violate the Free Exercise Clause, whether applied to membership requirements, leadership requirements, or both.

Finally, Plaintiffs' suggestion that *Carson v. Makin*, 596 U.S. 767 (2022), *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017), or *Espinoza v. Montana Dep't of Revenue*, 591 U.S. 464 (2020), silently upended centuries of Supreme Court precedent governing the application of the Free Exercise Clause to neutral and generally applicable laws is untenable. In a decision issued *after* this trilogy of cases, the Second Circuit reaffirmed and applied the general applicability doctrine articulated in *Emp. Div., Dep't of Hum. Res. of Or. v. Smith* to dismiss a Free Exercise claim without any suggestion that *Carson*, *Trinity Lutheran*, or *Espinoza* altered that framework. *See We the Patriots*, 76 F. 4th at 144. (observing that *Smith* traced the principle that the Free Exercise Clause does not excuse compliance with neutral and generally applicable laws "back to the late nineteenth century"); *St. Dominic Acad. v. Makin*, 181 F.4th 11, 53 (1st Cir. 2026) (rejecting plaintiff's Free Exercise argument because its "interpretation of *Carson* ignores *Smith's* accommodation of neutral, generally applicable laws.")

This is unsurprising because *Carson, Espinoza*, and *Trinity Lutheran* did not involve neutral and generally applicable policies or laws. Rather, each involved a law or regulation that expressly excluded religious individuals or institutions from otherwise available public benefits because of their religious character or religious exercise. *See Carson*, 596 U.S. at 774 (law requiring that any school receiving tuition assistance payments must be "a nonsectarian school"); *Espinoza,* 591 U.S. at 470 ("[A]dministrative rule prohibited families from using scholarships at religious schools"); *Trinity Lutheran*, 582 U.S. at 449 ("Department had a policy of categorically disqualifying churches and other religious organizations from receiving grants"). Accordingly, those cases addressed a fundamentally different constitutional question from the one presented here and therefore lend no support to Plaintiffs' Free Exercise challenge. *See Youth 71Five Ministries v. Williams*, 160 F.4th 964, 980 (9th Cir. 2025) (distinguishing *Carson* because the regulation at issue "does not deny funding based on a practice exclusive to religious organizations")

In fact, any suggestion that *Carson* displaced *Smith* or *Martinez* is refuted by the Supreme Court's own decisions. Just days after handing down *Carson*, the Court in *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022), reaffirmed *Smith*'s neutral-and-generally-applicable framework. *Id.* at 525. As such, for the same reasons articulated by the Supreme Court in *Christian Legal Soc'ty v. Martinez,* Plaintiff's Free Exercise challenge to SUNY Broome's all comers Policy must be rejected.

**2. SUNY Broome's Open Access and Nondiscrimination Policies Satisfy Rational Basis Review**

Because SUNY Broome's Open Access and Non-discrimination Policies are neutral and generally applicable, they are subject to rational basis review. *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 29 (2d Cir. 2021). Under that deferential standard, the Policies must be

upheld if "the State ha[s] chosen a means for addressing a legitimate goal that is rationally related to achieving that goal." *Id*. Plaintiffs cannot carry their burden of demonstrating otherwise.

SUNY Broome has several legitimate interests supporting its Open Access and Non-discrimination Policies. It cannot seriously be disputed that institutions possess a substantial interest in combating discrimination and ensuring equal access to the benefits they provide. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 624-26 (1984). SUNY Broome has a legitimate interest in ensuring that the benefits associated with student organization recognition, including access to campus resources, funding opportunities, and recruitment tools, are available on equal terms to all students regardless of religion, race, sex, or any other protected characteristic.

The Policies are plainly rationally related to those interests. By requiring recognized student organizations to maintain open membership and leadership eligibility, SUNY Broome ensures that students are not excluded from participation in officially recognized organizations on the basis of protected characteristics. The Policies likewise further SUNY Broome's interest in fostering an inclusive campus environment in which all students may participate in the educational, social, and leadership opportunities afforded by recognized student organizations. *See Youth 71Five Ministries*, 160 F.4th at 982 (holding that state had a legitimate interest in commitment to equitable access, equal opportunity, and inclusion and that an open access policy "rationally furthers that interest by ensuring that Division-funded initiatives are equally open to employees, volunteers, and participants regardless of race, sex, religion, or any other protected characteristic.") Accordingly, SUNY Broome's Open Access Policy easily satisfies rational basis review and must be upheld.

### D. <u>The Ministerial Exception and Church Autonomy Doctrine Cases Are Inapposite</u>

Plaintiffs make two arguments grounded in purported principles of "church autonomy": first, that SUNY Broome's Open Access Policy "violates the ministerial exception," and, second, that requiring InterVarsity to permit all otherwise eligible students to hold officer positions impermissibly intrudes into matters of "faith, doctrine, [and] governance." *Plfs.' Mem*. p. 15. Both arguments misconstrue the nature and scope of the ministerial exception and church autonomy doctrine.

"The ministerial exception 'precludes application of [labor and employment-discrimination] legislation to claims concerning the employment relationship between a religious institution and its ministers.'" *Jusino v. Fed'n of Cath. Teachers*, Inc., 54 F.4th 95, 104, n.2 (2d Cir. 2022). Relatedly, "the First Amendment's ecclesiastical abstention, or church autonomy, doctrine prohibits 'civil court interference in religious disputes.'" *Belya v. Kapral*, 45 F.4th 621, 628 n.4 (2d Cir. 2022). Critically, both doctrines operate as affirmative defenses, ***not*** as standalone constitutional claims. *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171 (2012) (holding that the ministerial exception "operates as an affirmative defense"); *Belya v. Kapral*, 2026 U.S. App. LEXIS 24841, *13, n.5 (2d. Cir. Aug. 18, 2026) ("[T]he church autonomy doctrine operates as an affirmative defense. . .").

Tellingly, Plaintiffs cite no authority from the Second Circuit (or any other federal Court of Appeals) suggesting that either doctrine creates a freestanding cause of action that may be invoked to invalidate neutral and generally applicable policies. To the contrary, the Ninth Circuit recently rejected that precise argument in a case involving a virtually identical challenge to a state agency's neutral and generally applicable nondiscrimination rule.

In *Youth 71Five Ministries v. Williams*, 160 F.4th 964 (9th Cir. 2025), a Christian nonprofit organization challenged an Oregon rule conditioning eligibility for state youth-services grants on compliance with a nondiscrimination policy. The organization required its board members, employees, and volunteers to affirm a Christian statement of faith and maintain involvement in a local church. *Id*. at 975. Like Plaintiffs here, 71Five asserted, among other things, that the rule violated principles of church autonomy and the ministerial exception. The Ninth Circuit rejected that novel theory outright, holding that those doctrines are "'affirmative defense[s] against suit' and not 'standalone right[s] that can be wielded against a state.'" *Id*. at 983. The First Circuit has also recently remarked that "it is not clear the ministerial exception as it currently stands can even be used as the basis of a claim, rather than as a defense." *St. Dominic Acad. v. Makin*, 181 F.4th 11, 52, 53, n. 43 (1st Cir. 2026).

The ministerial exception and church autonomy doctrine operate as shields against governmental intrusion into the internal affairs of religious institutions; they do not confer a freestanding constitutional right to disregard neutral and generally applicable laws. *Puri v. Khalsa*, 844 F.3d 1152, 1168 (9th Cir. 2017) ("Applying any laws to religious institutions necessarily interferes with the unfettered autonomy churches would otherwise enjoy, but this sort of generalized and diffuse concern for church autonomy, without more, does not exempt them from the operation of secular laws.")

In any event, neither doctrine is implicated here. SUNY Broome has not attempted to dictate InterVarsity's religious beliefs, interpret its doctrine, select its ministers, or otherwise interfere with matters of faith or ecclesiastical governance. InterVarsity may elect leaders that its members believe best advance its religious mission. *See Martinez*, 561 U.S. at 692 ("Students tend to self-sort and presumably will not endeavor en masse to join--let alone seek

leadership positions in--groups pursuing missions wholly at odds with their personal beliefs. And if a rogue student intent on sabotaging an organization's objectives nevertheless attempted a takeover, the members of that group would not likely elect her as an officer.")

Nor has SUNY Broome sought to regulate any employment relationship; SUNY Broome has merely conditioned official recognition on compliance with neutral and generally applicable Open Access and Non-discrimination Policies that apply equally to every student organization. Plaintiffs may incorporate their statement of faith into their constitution, promote their religious message, encourage the election of leaders who share their beliefs, and associate with others who support their mission. *See* Kocieniewski Dec. ¶ 34. What Plaintiffs seek is not protection from governmental intrusion into ecclesiastical matters, but an exemption from generally applicable requirements governing access to the benefits of official recognition. Neither the ministerial exception nor the church-autonomy doctrine confers such a right.

**<u>POINT III</u>**

**THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVORS DEFENDANTS**

Plaintiffs' motion must be denied because they have failed to carry their burden of demonstrating either irreparable harm or a likelihood of success on the merits. But even if the Court were to reach the remaining factors, Plaintiffs are not entitled to the extraordinary relief they seek because they cannot establish that the balance of equities tips in their favor or that an injunction would serve the public interest. In making this determination, "[c]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Rignol v. Yale Univ*., 2025 U.S. Dist. LEXIS 84896, *33 (D. Conn. May 5, 2026) (quoting *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 55 (2008). The equities strongly favor Defendants. Plaintiffs seek a mandatory injunction

requiring SUNY Broome to confer official recognition and the attendant benefits – including student funds – on InterVarsity notwithstanding that its constitution discriminates on the basis of religion, a protected characteristic not only under SUNY Broome Policies, but under New York antidiscrimination legislation. Such relief would alter, rather than preserve, the status quo and would compel SUNY Broome to depart from policies that apply equally to all student organizations before the merits have been adjudicated. *Rignol*, 2025 U.S. Dist. LEXIS 84896, at *33 (finding balance of equities weighed against compelling university to permit student to graduate because it would "fundamentally alter the program"). By contrast, InterVarsity remains free to meet, worship, pray, conduct Bible studies, recruit members, and pursue its religious mission while this litigation proceeds.

The public interest likewise weighs against preliminary relief. SUNY Broome has a legitimate and substantial interest in administering a single set of recognition rules for all student organizations, ensuring that leadership opportunities in officially recognized and publicly supported clubs remain open to the students who fund that system, and promoting equal access to the benefits associated with official recognition. The public interest is not served by requiring the College to create a religious exemption from its Open Access and Non-discrimination Policies before the Court has determined whether such relief is warranted. Accordingly, the balance of equities and the public interest weigh decisively against the issuance of a preliminary injunction.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs have failed to meet their burden of establishing entitlement to the extraordinary remedy of a preliminary injunction, and the motion should be denied in its entirety.

Dated: September 28, 2026

BOND, SCHOENECK & KING, PLLC

By: */s/Suzanne M. Messer*
Suzanne M. Messer, Esq.
Jacqueline E. Zahn, Esq.
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8628
Email: smesser@bsk.com
Email: jzahn@bsk.com

*Attorneys for Defendants*