**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

INTERVARSITY CHRISTIAN FELLOWSHIP/ USA, et al.,

*Plaintiffs*,

v.

SUNY BROOME COMMUNITY COLLEGE, et al.,

*Defendants*.

Case No. 3:26-cv-01623-MAD-MJK

**REPLY IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

LEGAL STANDARD .......... 1

ARGUMENT .......... 2

I. Plaintiffs are likely to succeed on the merits. .......... 2

A. SUNY Broome is violating the church autonomy doctrine. .......... 2

B. SUNY Broome is violating the Free Exercise Clause. .......... 5

C. SUNY Broome is violating the Free Speech Clause. .......... 7

D. SUNY Broome is violating the right of free association. .......... 8

II. The other preliminary-injunction factors are satisfied. .......... 9

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Agudath Israel of Am. v. Cuomo*,
983 F.3d 620 (2d Cir. 2020)....................9, 10

*Capitol Hill Baptist Church v. Bowser*,
496 F. Supp. 3d 284 (D.D.C. 2020)....................9

*Carson v. Makin*,
596 U.S. 767 (2022)....................5, 6

*Chislett v. N.Y.C. Dep't of Educ.*,
157 F.4th 172 (2d Cir. 2025)....................7

*Christian Legal Society v. Martinez*,
561 U.S. 661 (2010)....................6

*Conlon v. InterVarsity Christian Fellowship*,
777 F.3d 829 (6th Cir. 2015)....................2

*Dennis v. Higgins*,
498 U.S. 439 (1991)....................3

*Dixon v. Edwards*,
290 F.3d 699 (4th Cir. 2002)....................3

*Evans v. USA Bobsled & Skeleton Fed'n*,
No. 23-cv-1429, 2024 WL 4120716
(N.D.N.Y. 2024)....................10

*Everson v. Bd. of Educ.*,
330 U.S. 1 (1947)....................5

*Fellowship of Christian Athletes v. District of Columbia*,
743 F. Supp. 3d 73 (D.D.C. 2024)....................9

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
82 F.4th 664 (9th Cir. 2023)....................2, 9

*First Choice Women's Res. Ctrs. v. Davenport*,
608 U.S. 174 (2026)....................8

*Fratello v. Archdiocese of N.Y.*,
863 F.3d 190 (2d Cir. 2017)....................6

*Gaddy v. Corp. of the President*,
148 F.4th 1202 (10th Cir. 2025) .......................................................................4

*Holt v. Hobbs*,
574 U.S. 352 (2015).........................................................................................9

*Hosanna-Tabor v. EEOC*,
565 U.S. 171 (2012).......................................................................3, 5, 6, 7, 8

*Hsu v. Roslyn Union Free School District*,
85 F.3d 839 (2d Cir. 1996).............................................................................7, 8

*InterVarsity Christian Fellowship/USA v. Bd. of Governors of Wayne State Univ.*,
534 F. Supp. 3d 785 (E.D. Mich. 2021)..........................................................3, 8

*Kedroff v. St. Nicholas Cathedral*,
344 U.S. 94 (1952).............................................................................................3

*Mahmoud v. Taylor*,
606 U.S. 522 (2025)...........................................................................................6

*Marks Org. v. Joles*,
784 F. Supp. 2d 322 (S.D.N.Y. 2011).................................................................9

*McRaney v. N. Am. Mission Bd.*,
157 F.4th 627 (5th Cir. 2025) ............................................................................4

*N. Am. Soccer League v. U.S. Soccer Fed'n*,
883 F.3d 32 (2d Cir. 2018)..................................................................................1

*N.Y. Progress & Prot. PAC v. Walsh*,
733 F.3d 483 (2d Cir. 2013)................................................................................9

*Northside Bible Church v. Goodson*,
387 F.2d 534 (5th Cir. 1967) ..............................................................................3

*Olivier v. City of Brandon*,
607 U.S. 552 (2026)............................................................................................3

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
591 U.S. 732 (2020)...................................................................................... 4, 7-8

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
515 U.S. 819 (1995).............................................................................................7

*Serbian E. Orthodox v. Milivojevich*,
426 U.S. 696 (1976).............................................................................................3

*Sherbert v. Verner*,
374 U.S. 398 (1963) ........ 5

*St. Dominic Acad. v. Makin*,
181 F.4th 11 (1st Cir. 2026) ........ 6

*Students for Fair Admissions v. USMA*,
709 F. Supp. 3d 118 (S.D.N.Y. 2024) ........ 9

*Tassinari v. Salvation Army*,
No. 21-cv-10806, 2026 WL 1948096
(D. Mass. July 6, 2026) ........ 4

*Trinity Lutheran Church v. Comer*,
582 U.S. 449 (2017) ........ 4, 6, 9

*Youth 71Five Ministries v. Williams*,
160 F.4th 964 (9th Cir. 2025) ........ 3

**Statutes**

42 U.S.C. § 1983 ........ 3

**Other Authorities**

5 Wright & Miller's Federal Practice & Procedure
§ 1274 (4th ed. 2026) ........ 2

Hon. Mae A. D’Agostino, *Individual Rules and Practices*, § 2.A ........ 10

## INTRODUCTION

SUNY Broome is excluding InterVarsity because of its religious leadership standards. SUNY Broome concedes as much, establishing First Amendment violations that warrant injunctive relief.

To avoid that relief, SUNY Broome raises several mistaken legal arguments. It asserts that, unlike all other First Amendment protections, church autonomy can only be asserted as an affirmative defense and never as a claim—ignoring cases that have vindicated such claims. It treats a footnote in *Christian Legal Society v. Martinez* as superseding three more recent Supreme Court Free Exercise opinions. It argues *Martinez* "controls" InterVarsity's speech and association claims despite the unique harm its no-religious-standards rule inflicts on InterVarsity's expression. It contends that any such harm isn't legally significant because InterVarsity can still partially exercise its religion, despite being deprived of resources that the Supreme Court has identified as key to remaining "viable." And it claims that waiting three months to sue bars obtaining protection now—a rush-to-the-courthouse rule courts have widely (and wisely) rejected.

SUNY Broome is violating the First Amendment. This Court should grant injunctive relief.

## LEGAL STANDARD

At the outset, Defendants claim InterVarsity is asking for a "mandatory" injunction, requiring not just a likelihood of success on the merits (the standard for a "prohibitory" injunction), but "'a clear or substantial'" likelihood. Opp.7 (citing *N. Am. Soccer League v. U.S. Soccer Fed'n*, 883 F.3d 32, 36-37 (2d Cir. 2018)). InterVarsity easily exceeds that higher threshold, but it doesn't have to. A preliminary injunction is "mandatory" if, while the case proceeds, it would "disrupt" instead of "maintain the status quo." *Soccer League*, 883 F.3d at 36-37. Here, the status quo was that religious groups could set religious leadership requirements, as shown by SUNY Broome's recognition of Campus Bible Fellowship for years despite its religious leadership requirement.

Opp.18 n.7. That status quo is consistent with the practice of numerous other SUNY campuses, which recognize InterVarsity chapters with religious leadership requirements, and with public colleges nationwide, which allow religious clubs to have religious leadership requirements. Dkt. 24-8 ¶¶ 6-8. So the "prohibitory" injunction standard applies. *See Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*, 82 F.4th 664, 684-85 (9th Cir. 2023) (en banc) (*FCA-San Jose*) (agreeing). Hence SUNY Broome's position in *Campus Bible Fellowship v. SUNY Broome*, where it applies the "prohibitory" standard. Dkt. 23 at 7, No. 3:26-cv-1678 (N.D.N.Y. Sep. 28, 2026).

## ARGUMENT

### I. Plaintiffs are likely to succeed on the merits.

#### A. SUNY Broome is violating the church autonomy doctrine.

SUNY Broome violates the church autonomy doctrine twice over, interfering with InterVarsity's right to select its religious leaders and barring InterVarsity from requiring those who teach its faith to sincerely believe its faith. Mot.10-14. SUNY Broome's response effectively concedes that InterVarsity is a religious group protected by the Religion Clauses, its student leaders qualify as "ministers" under church autonomy's ministerial exception, and, by refusing to "permit InterVarsity Broome to restrict eligibility for leadership ... based upon a requirement ... [to] adhere to particular religious beliefs," SUNY Broome is interfering in leadership selection. Opp.6.

That merits relief. Church autonomy "categorically prohibits federal and state governments from becoming involved in religious leadership" selection, *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 836 (6th Cir. 2015), especially by barring "religious" leadership altogether.

Defendants respond that church autonomy is only an affirmative defense and never a claim. Opp.22-24. That's wrong both as a general proposition, *see* 5 Wright & Miller's Federal Practice & Procedure § 1274 (4th ed. 2026) ("affirmative defense" designation doesn't prevent assertion as

a "claim in a preemptive action for declaratory or injunctive relief"), and as specifically applied to church autonomy, *InterVarsity Christian Fellowship/USA v. Bd. of Governors of Wayne State Univ.*, 534 F. Supp. 3d 785, 806 (E.D. Mich. 2021) (church autonomy rights are "not siloed to use as an affirmative defense"). Further, just like in *Wayne State*—which Plaintiffs cited, Mot.11, 13, but Defendants ignore—courts have long upheld plaintiffs' claims arising from the Religion Clauses. *See*, *e.g.*, *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 96, 100 (1952); *Serbian E. Orthodox v. Milivojevich*, 426 U.S. 696, 707 (1976); *Dixon v. Edwards*, 290 F.3d 699, 718 (4th Cir. 2002); *Northside Bible Church v. Goodson*, 387 F.2d 534, 536 (5th Cir. 1967). That precedent wholly undermines Defendants' reliance on *Youth 71Five Ministries v. Williams*, which emphasized its disposition was grounded in the plaintiff there having "identified no opinion from the Supreme Court ... or [any other] court of appeals" finding the Religion Clauses support a claim. 160 F.4th 964, 983 (9th Cir. 2025).

Further, the claims here arise under 42 U.S.C. § 1983, and the Supreme Court has "repeatedly held" that § 1983's text compels a broad construction that protects "*any* rights ... secured by the Constitution." *Dennis v. Higgins*, 498 U.S. 439, 443-45 (1991) (quoting § 1983, emphasis in original). Claims vindicating First Amendment rights thus "fall[ ] within § 1983's heartland." *Olivier v. City of Brandon*, 607 U.S. 552, 560 (2026). It would hardly respect the Constitution's "special solicitude" for church autonomy, *Hosanna-Tabor v. EEOC*, 565 U.S. 171, 189 (2012), to make it the sole First Amendment protection where the right holder remains "trapped between the Scylla of intentionally flouting state law and the Charybdis of what [it] believes to be constitutionally protected activity," *Olivier*, 607 U.S. at 561 (cleaned up).

Next, Defendants argue the Religion Clauses protect only "employment relationship[s]." Opp.24. Again, *Wayne State* rejected that argument. 534 F. Supp. 3d at 811. And *none* of the early

Supreme Court precedents establishing the "principle of church autonomy" were "exclusively concerned" with employment. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 747 (2020). The same is true for many modern cases. *See, e.g.*, *Gaddy v. Corp. of the President*, 148 F.4th 1202 (10th Cir. 2025); *Tassinari v. Salvation Army*, No. 21-cv-10806, 2026 WL 1948096 (D. Mass. July 6, 2026). Courts have repeatedly applied autonomy rights "just as strongly to ministries structured through voluntary associations" as to paid employment. *McRaney v. N. Am. Mission Bd.*, 157 F.4th 627, 652 (5th Cir. 2025) (collecting cases). A contrary rule would "irrationally exclude" protection for minority faith groups that have volunteer clergy. *Id.*

Pivoting, Defendants appear to suggest that, while InterVarsity can't openly require religious alignment, it can "encourage" members to surreptitiously vote on that basis. Opp.24. But Defendants' policies expressly forbid students from making leadership distinctions "in any way," including "on the basis of ... religion" in the "operation of any of [InterVarsity's] programs and activities." Opp.3-4 (cleaned up). And students who violate such policies run the risk of disciplinary sanctions. 2d Jao Decl. Ex.A at 4. Regardless, InterVarsity believes being up-front with its religious expectations is important for many reasons, including ensuring candidates have the vocational calling and spiritual maturity required for the role before any elections. 2d Jao Decl. ¶¶ 6-8.

Finally, SUNY Broome argues that church autonomy doesn't apply because denying recognition isn't trying to "dictate" who InterVarsity should "select [as] its ministers." Opp.23. But church autonomy bars "*any* attempt" to "dictate *or even to influence*" ministerial selection. *Our Lady*, 591 U.S. at 746 (emphasis added). The First Amendment "protects against indirect coercion or penalties," "not just outright prohibitions," because denying "even a gratuitous benefit inevitably deters or discourages the exercise of First Amendment rights." *Trinity Lutheran Church v. Comer*, 582 U.S. 449, 463 (2017) (cleaned up). Here, denying recognition "operate[s] as a penalty" on

InterVarsity for requiring its leaders to sincerely affirm its faith, which is "no less prohibited by the First Amendment" than dictating its ministerial selection. *Hosanna-Tabor*, 565 U.S. at 194.

**B. SUNY Broome is violating the Free Exercise Clause.**

SUNY Broome doesn't dispute that its policy burdens InterVarsity's religious exercise. *Cf.* Opp.15. And it admits that it is denying InterVarsity otherwise-available benefits because of InterVarsity's religiously motivated leadership selection. *See* Opp.15 n.5 (InterVarsity could have "the attendant benefits of official club recognition" *if* it changed its leadership selection policies). Under *Carson v. Makin*, 596 U.S. 767, 778-79 (2022), that triggers strict scrutiny, Mot.15-17—which SUNY Broome doesn't even try to satisfy, Opp.20-21 (analyzing rational basis review).

Rather than engaging *Carson* head-on, SUNY Broome attempts to recast it. In Defendants' telling, *Carson* applies only if a law or regulation "*expressly* exclude[s] religious individuals or institutions … because of their religious character or religious exercise." Opp.20 (emphasis added). And because the policies here are, per SUNY Broome, neutral and generally applicable, it argues that the rule of *Employment Division v. Smith*, not *Carson*, governs this case. Opp.19-20.

That's not how *Smith* and *Carson* interact. While *Smith* remains a residual rule for some neutral and generally applicable laws, the Supreme Court has repeatedly held, without any reference to *Smith*, "that a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Carson*, 596 U.S. at 778 (citing *Sherbert v. Verner*, 374 U.S. 398, 404 (1963) ("It is too late … to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege."); *Everson v. Bd. of Educ.*, 330 U.S. 1, 16 (1947) (similar)). That's what SUNY Broome did here. Official club recognition provides benefits that would be available to InterVarsity but for its religious-leadership requirements, placing this case squarely within *Carson*. Because SUNY Broome's policy, "in

practical effect," would require InterVarsity to "surrender [its] status as [a religious organization] in order to obtain public [benefits]," it must face strict scrutiny. *St. Dominic Acad. v. Makin*, 181 F.4th 11, 41 (1st Cir. 2026) (citing *Trinity Lutheran*, 582 U.S. at 462).

Contrary to Defendants' suggestion otherwise, Opp.17, whether government "single[s] out religious groups" isn't dispositive under *Carson*. For example, in *Mahmoud v. Taylor*, the Supreme Court applied the *Carson* rule where religious parents were excluded from the "benefit" of public education, even though the policy at issue addressed all opt-outs to certain forms of instruction, and not just religiously motivated opt-outs. 606 U.S. 522, 538, 561, 563 (2025) (citing *Trinity Lutheran*). For similar reasons, *Carson* does not only apply to "express[ ]" exclusions of religious groups. *Contra* Opp.20. That would "reduce[ ]" Free Exercise "to a simple semantic exercise": you can exclude religious groups, so long as you don't do so explicitly. *Carson*, 596 U.S. at 784. First Amendment rights can't be evaded merely by omitting "magic words." *Id.* at 785.

Finally, SUNY Broome claims a footnote in *Christian Legal Society v. Martinez* is "controlling" for all Free Exercise claims, Opp.14, but *Martinez* only applied the *Smith* framework to an "across-the-board all-comers policy" encompassing club membership, 561 U.S. 661, 697 n.27 (2010). It did not analyze the case under the rules applicable to public benefits or religious leadership selection—rules that were repeatedly elaborated in later Supreme Court rulings.

Those rules are clear. Religious groups lawfully exercise their religious liberty when selecting their religious ministers. *Fratello v. Archdiocese of N.Y.*, 863 F.3d 190, 203 (2d Cir. 2017) (citing *Hosanna-Tabor*, 565 U.S. at 194-95). Thus, when a state school places a condition on public benefits that bars religious groups' selection of their religious leaders, it is creating a condition based on lawful religious exercise. That runs afoul of *Carson*, *Espinoza*, and *Trinity Lutheran*. This Court

should apply those cases and subject Defendants to strict scrutiny, an issue they have now forfeited. *Chislett v. N.Y.C. Dep't of Educ.*, 157 F.4th 172, 187 n.7 (2d Cir. 2025).

**C. SUNY Broome is violating the Free Speech Clause.**

SUNY Broome's actions also violate the Free Speech Clause. By denying InterVarsity recognized status, it is "discriminat[ing] ... on the basis of viewpoint" in a manner that is not "'reasonable in light of the purpose served by the forum.'" *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829-30 (1995); *see also* Mot.19-22.

SUNY Broome again seeks refuge in *Martinez*, claiming that its policy is viewpoint neutral because it applies to everyone and has only "an incidental effect on some speakers or messages." Opp.13. But barring InterVarsity's religious leadership requirements does far more than incidentally burden InterVarsity's religious speech. As the Supreme Court has made clear since *Martinez*, when religious groups express their beliefs, "the messenger matters." *Hosanna-Tabor*, 565 U.S. at 200-01 (Alito, J., joined by Kagan, J., concurring). "[A] wayward [leader]'s preaching, teaching, and counseling could contradict the [group's] tenets and lead the congregation away from the faith." *Our Lady*, 591 U.S. at 747. Since InterVarsity's student leaders are the primary conduits of its Christian message, *see* Dkt. 24-8 at 5-6, forcing it to accept leaders who reject its beliefs is no incidental burden, but rather fundamentally alters its religious viewpoint and speech.

SUNY Broome's attempt to distinguish *Hsu v. Roslyn Union Free School District* also fails. Opp.14 n.4. Yes, *Hsu* involved the Equal Access Act, but it treated the Act as an "analog" to the First Amendment, using free-speech precedent as "interpretive tools." 85 F.3d 839, 856-57 (2d Cir. 1996). And *Hsu*'s core holding—that religious leadership is "essential to the expressive content of [a religious group's] meetings" because the group's speech depends on "the religious commitment of [its] officers," *id.* at 848, 857—has been fundamentally reaffirmed since, *Our Lady*,

591 U.S. at 747. And that holding shows why Defendants' policy uniquely burdens InterVarsity's religious views in ways that don't threaten other secular views. Mot.21.

Finally, SUNY Broome maintains that "combating discrimination" serves the forum's goal of "foster[ing] inclusivity." Opp.15, 21. But rejecting InterVarsity neither combats discrimination nor fosters inclusivity. Basic integrity, not invidious discrimination, leads religious groups to have religious leaders. *Hsu*, 85 F.3d at 869, 871. And rather than promoting inclusivity with a broader "diversity" of sincere religious viewpoints, *Wayne State*, 534 F. Supp. 3d at 817, ostracizing religious groups directly undermines the forum's purpose by unreasonably excluding religious views.

**D. SUNY Broome is violating the right of free association.**

SUNY Broome's actions violate free-association rights by requiring InterVarsity to associate with individuals who do not agree with its core religious message. *First Choice Women's Res. Ctrs. v. Davenport*, 608 U.S. 174, 185 (2026). Associational rights "appl[y] with special force with respect to religious groups, whose very existence is dedicated to the collective expression ... of shared religious ideals," and whose leaders are "the very 'embodiment of its message.'" *Hosanna-Tabor*, 565 U.S. at 200-01 (Alito, J., joined by Kagan, J., concurring); Mot.22-24.

Rather than address this claim on its own terms, SUNY Broome argues that free association and free speech collapse into a single analysis. Opp.15 n.5. But, as the Supreme Court explained earlier this year, it "infringe[s] freedom of association" for government to "deny benefits to an organization based on its message." *First Choice*, 608 U.S. at 185. That's this case. In any event, even if speech and association rights were coterminous in *only* student-group cases, that still wouldn't help SUNY Broome given its free speech violation here. *See supra* Section I.C.

## II. The other preliminary-injunction factors are satisfied.

***Irreparable harm.*** SUNY Broome doesn't dispute that the loss of First Amendment rights is, as a matter of blackletter law, irreparable harm. Mot.24; *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 636 (2d Cir. 2020) ("[A] presumption of irreparable injury flows from a violation of constitutional rights[.]" (cleaned up)). Instead, it quibbles that InterVarsity can still worship even if, due to its religious leadership standards, it's lost access to the benefits of recognition. Opp.9. But that only *confirms* the harm. *Trinity Lutheran*, 582 U.S. at 450; *Holt v. Hobbs*, 574 U.S. 352, 362 (2015) (permission for "other forms of religious exercise" doesn't excuse burden). The Second, Seventh, Eighth, and Ninth Circuits—and many district courts—have all treated the denial of recognized status to a religious student group as irreparable harm. Mot.24. Defendants cite no contrary cases.

Defendants next argue that taking six months to sue undermines any claim of injury. Opp.9. But as Defendants concede, InterVarsity spent half that time attempting to resolve the dispute privately, Opp.10, just "the sort of behavior that courts ordinarily encourage," and InterVarsity shouldn't be "punished for seeking an amicable resolution before rushing to the courthouse," *Capitol Hill Baptist Church v. Bowser*, 496 F. Supp. 3d 284, 302 (D.D.C. 2020); *accord Marks Org. v. Joles*, 784 F. Supp. 2d 322, 333 (S.D.N.Y. 2011) ("diligent pursuit of settlement negotiations can justify delay"). Waiting "only three months" is not undue delay, *Students for Fair Admissions v. USMA*, 709 F. Supp. 3d 118, 137 n.16 (S.D.N.Y. 2024), and that's especially true in student-group cases like this, *Fellowship of Christian Athletes v. District of Columbia*, 743 F. Supp. 3d 73, 94 (D.D.C. 2024) (19 months); *FCA-San Jose*, 82 F.4th at 674-77 (24 months).

Further, courts are reticent to second-guess which exercise of a First Amendment right "is pressing" and which "can bide its time." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 489 (2d Cir. 2013). The record shows InterVarsity's rights are pressing. Being denied recognition in

violation of the First Amendment is not only irreparable harm as a matter of law; it is also an existential threat to InterVarsity's ministry at SUNY Broome. Dkt. 24-8 ¶ 9; Dkt. 24-16 ¶¶ 26, 35; Dkt. 24-27 ¶¶ 5, 7. Chapters that lose official recognition in cases like this wither and often die; those with recognition thrive. Dkt. 24-8 ¶ 9; 2d Jao Decl. ¶¶ 12-14. That harm is irreparable.

***Equities and public interest.*** SUNY Broome doesn't contest that the remaining factors merge here and largely turn on the likelihood of success. Mot.25. Yet it claims that the equities favor it because InterVarsity seeks a "mandatory" injunction upsetting the "status quo," Opp.7, which is incorrect, *see supra* pp. 1-2. SUNY Broome also argues there's a public interest against allowing a "religious exemption" from its "single set of recognition rules," which it claims promotes "equal access" for all students. Opp.24-25. But the claim of "equal access" sits uneasily with its suggestion that InterVarsity members can secretly vote based on a candidate's religious beliefs. *Id.* And Defendants' position would erase much of the Free Exercise Clause, which courts regularly protect via religious exemptions. *See, e.g.*, *Agudath Israel*, 983 F.3d at 637; Mot.25 (collecting cases).[1]

**CONCLUSION**

InterVarsity is facing ongoing, irreparable harm to core First Amendment rights. The relevant facts are undisputed, and Defendants' contrary legal arguments are wrong. The Court should grant InterVarsity's motion for a preliminary injunction.

---

[1] Defendants suggest that the First Amendment claims here should all be summarily denied for failure to engage in pre-motion letter practice under this Court's Individual Rules. Opp.2 n.1. That footnoted argument is both "inadequately raised," *Evans v. USA Bobsled & Skeleton Fed'n*, No. 23-cv-1429, 2024 WL 4120716, at *19 n.6 (N.D.N.Y. Sep. 9, 2024), and wrong: the pre-motion practice applies to ordinary motions, not motions supported by an order to show cause. *Compare* Hon. Mae A. D'Agostino, *Individual Rules and Practices*, at § 2.A.*i* (ordinary motions), *with* § 2.A.*iiii* (Orders to Show Cause) (rev. Apr. 2020); *see*, *e.g.*, *Doe v. Cornell Univ.*, No. 25-cv-357 (N.D.N.Y.) (utilizing show-cause process).

Respectfully submitted this 7th day of October, 2026.

/s/ Colten L. Stanberry
Mark Rienzi
Daniel H. Blomberg*
Colten L. Stanberry*
Richard C. Osborne*
Caleb H. Angell
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave, N.W., Suite 400
Washington, DC 20006
(202) 955-0095
cstanberry@becketfund.org

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*